## Charles E. Davis, Appellant, v. William H. Galbraith.

*Evidence—Fraud—Sale—Charge of the court.*

In an action to recover the purchase money of a drug store, defendant testified that prior to the sale he had been taken into the cellar of the store, and had been shown a large number of boxes which the seller rep-

resented were full of goods, and that such representation was false. He was then asked this question: " State whether or not the boxes which were pointed out to you in the cellar, if they had been filled with articles used in the drug business, would, as compared with the whole of the articles and things supposed to be in the store and cellar, have had a substantial value; not in dollars and cents, but in articles? " *Held*, that the question was properly allowed.

In this case which involved questions of fraud and misrepresentation in the sale of a drug store, a claim that the charge of the court was inadequate and tended to mislead the jury, was not sustained.

Argued Jan. 12, 1898. Appeal, No. 254, Jan. T., 1897, by plaintiff, from judgment of C. P. No. 4, Phila. Co., December T., 1896, No. 316, on verdict for defendant. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a promissory note given for a balance due on account of the purchase of a drug store. Before WILLSON, J.

The defense to the note was: (1) that the defendant was deceived by allegations made by Smith in stating that the sales of the store had been, for about nine months previous, on an average $17.50 per day, when, as a matter of fact, they had been but $12.50 per day; (2) that the defendant had been deceived by misrepresentations made by Smith as to the contents of certain boxes in the cellar of the store, Smith saying either that they were full or that they were stocked when, as a matter of fact, they were practically empty; (3) that the defendant had not received the formulas of the different preparations which had been sold at the store.

At the trial, defendant testified as follows:

" State whether or not the boxes which were pointed out to you in the cellar, if they had been filled with articles used in the drug business, would, as compared with the whole of the articles and things supposed to be in the store and cellar, have had a substantial value; not in dollars and cents, but in articles? "

Objected to. Objection overruled. Exception for plaintiff.

" A. Yes, sir." [6]

The court charged as follows:

The plaintiff, Mr. Davis, has brought suit upon a note for

$2,000. That note was given by the defendant, Mr. Galbraith, to the firm of Smith & Co., from whom the defendant purchased a drug store, by which we are, I suppose, to understand the lease, good-will, fixtures and stock of goods, and also, in view of all the evidence here, undoubtedly, a number of recipes and formulas for concoctions which had been previously associated in some way with that particular drug store. The plaintiff in this case is subject to certain limitations of his case which, in many causes, a plaintiff would not be subject to, by reason of the fact that when the note in suit had passed to him it had already matured. He took it, therefore, subject to all the equities, or to use a term which is not technical, the rights which the defendant had as against Smith & Co., so that, if the defendant could have set up a good defense against Smith & Co. upon the lines which have been followed in this case, that defense would be good as against the plaintiff, notwithstanding he was not a direct party to the note.

[There are three grounds upon which the defendant says that he ought not to be compelled to pay this note. The first is, that he was deceived by misrepresentations made by one of the firm of Smith & Co. as to the magnitude of the business that had been transacted at their store. Second, that he had been deceived as to the amount of goods which he was purchasing by what was said in the store, and in the cellar of the store, before the sale. Third that there has been a failure of consideration; that is, a failure on the part of the defendant to get what he bought, by reason of the fact that he has not received the formulas which constituted, no doubt, in view of the evidence, a substantial part of the contract.

Now, the first two of these points involve a charge of fraud on the part of Mr. Walter Smith. The third does not involve a charge of fraud on his part, but is of a somewhat different nature, which I have already characterized as a failure of consideration.] [1]

I ought to say to you at the outset, with reference to the charges of fraud which have been made, that you are not to presume fraud.

It is not every exaggerated statement that a man makes which amounts to fraud. If all such statements did, I suppose that in the dealings of men with one another there would be very

few of them that would stand.  People deal in hyperboles.
When a man wants to sell something to another, that thing is
very good in his eyes—for the time being, at any rate—and he
represents it as quite as good as it is, and perhaps a little better.
It seems to me you are bound to take notice of that element of
human nature in reaching a conclusion in a case of this sort.

[Take up the first fraud which is alleged, that of imposition
in regard to the amount of the sales at this store—was Mr. Gal-
braith deceived in regard to that?  Was he led into the trans-
action, and induced to buy this drug store, by what Mr. Smith
said to him, and did Mr. Smith say to him that which was not
true, and material, and substantial, and apart from the truth?
That is the point.  If he was deceived, if he acted upon a de-
ception, if he was misled by representations from Mr. Smith on
material points which were not true, and which were so far
away from the truth as to tend to injure and deceive, then the
transaction was a transaction which Mr. Galbraith could avoid.
If that operated so as to lead him to give more than the prop-
erty was worth, to the extent of the amount of this note, it
would be a proper matter for you to take into consideration.
You will observe that he has not endeavored to have the whole
transaction set aside upon the ground of fraud.  He still retains
the drug store; he still transacts business there, but he says he
was injured by the alleged misrepresentation certainly to the
extent of the note involved in this matter.]  [2]

[Now, what is the second ground?  It is in regard to the
alleged misstatements as to the contents of the store and the
amount of stock on hand.  It is said that Mr. Smith, when Mr.
Galbraith went into the store, was told by Mr. Galbraith that
the store was not very well stocked; that Mr. Galbraith said
something of that sort, and that Mr. Smith said, " O, well, it is
well stocked down cellar"—or something to that effect—" Come
down stairs and you will see," and that they went down and
found a large number of boxes, with marks on some of them
indicating their contents, and that Mr. Smith said either that
the boxes were full, or that they were well stocked.  I think
Mr. Galbraith testified that he said that the boxes were full,
and that the young man who was his clerk said that they were
well stocked, and that Mr. Galbraith said that Mr. Smith took
some bottles out of one or two of the boxes.  Well, was that a

misrepresentation? Was it a deception which operated to bring about a bargain which otherwise would not have taken place? I confess that this part of the case does not impress me so strongly as it seems to impress some others. It is a part of the case that I must leave to you to decide, without attempting to tell you how you ought to decide it. I merely want to say, as an expression of what strikes my own mind, that it seems to me quite doubtful whether a man who is taken down into a cellar, and shown what there is there, and who does not himself undertake to look or ascertain what there is in that cellar, could hardly be regarded as having been misled by statements made by the other party with whom he was dealing. The opportunity was there for him to ascertain if he chose what the amount of stock was. However, that is a question for you to decide, in view of what I have said to you.] [3]

Now, the third point is this. Assuming, as I presume you will, and as I would if I were in your place, that Mr. Galbraith had a right under the contract which he made with Mr. Smith to ask to have the formulas, the prescriptions, the recipes, or whatever you choose to call them, for those different preparations which were sold at that store, and which seem to have borne in general Mr. Davis's name, did he or did he not get them? If he did, he got all he was entitled to. If he did not, if they were a substantial part of the bargain, and were in the minds of the parties represented by this note which was given, which, perhaps, you may reasonably infer from the evidence, then I do not think the plaintiff ought to have a verdict. But if the defendant got those formulas, whether he got them in a book or in separate pieces of paper, he could ask no more. Now that is a pure question of fact. The defendant says that he did not get them; that he got some formulas that he tried to use, and that he could not produce the same results.

Now, which do you believe upon that point? Do you believe those who say that there were formulas, and the most important formulas, which have not been put in the hands of the defendant, or do you believe Mr. Davis and other witnesses, who testified to the contrary? You are to bear in mind that the defendant did not buy the exclusive right to these formulas. There was nothing in the contract which gave to him, and to him alone, the right to use these prescriptions. There is noth-

ing at all in the contract to prevent other people from using them, either Mr. Davis, himself, or his son, or his son-in-law, or anybody else. All that Mr. Smith was bound to do to carry out the contract fully according to its terms, as far as this matter of the formulas was concerned, was to put those formulas in possession of the defendant.

As to one or two of the preparations which were referred to by the defendant, the explanation by the plaintiff of the reason why they were not transferred, or not communicated, is that in point of fact they have no existence, so far as he was concerned. One was a dental wash, or something of that sort, and the other was a strengthening bitters. He stated—and one or two other witnesses testified—that they had not been on sale in the store for a long period of time. Of course, if that was so, if they had never constituted an element of any moment in the business, I do not think you would be justified in treating the omission to furnish him with those formulas as a breach of the agreement. I have now gone over this case, purposely endeavoring not to indicate to you in any way what your verdict should be, but simply trying to put before you certain lines which should indicate to you the manner in which you ought to take up the case, consider it, and to dispose of it. If, in view of what I have said to you, you consider that the case of the plaintiff has been made out—if there has been no defense set up here satisfactorily under the evidence to defeat his claim upon the note, then he is entitled to the amount of the note with interest from the time it fell due. [If the defendant has made out a case upon the lines which I have indicated, then your verdict should be for the defendant.] [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–4) above instructions, quoting them , (5) that the charge as a whole was inadequate and tended to mislead the jury; (6) ruling on evidence, quoting the bill of exceptions.

*Leoni Melick*, of *Melick & Potter*, for appellant.—The general effect of the charge was to give too much prominence to the allegation of fraud. The jury were in effect told that if the

defendant was deceived they could give him a verdict without regard to how much in value was involved in the deception.

The measure of damages in an action upon a warranty and for fraud in the sale of personal property are the same : 2 Benjamin on Sales (8th ed.), sec. 777 ; Whitney v. Allaire, 1 N. Y. 305 ; Conmey v. Macfarlane, 97 Pa. 364 ; Murphy v. Taylor, 173 Pa. 321.

*James L. Stanton* and *Alex. Simpson, Jr.,* for appellee were not heard.

PER CURIAM, January 24, 1898 :

We find nothing in this record that would justify a reversal of the judgment entered on the verdict in favor of the defendant.

The first four specifications allege error in the excerpts, from the learned trial judge's charge, recited therein. The subject of complaint in the fifth is " that the charge, as a whole, was inadequate and tended to mislead the jury." These specifications may be disposed of together in a few words. Considering the charge as a whole, we find no error therein of which the plaintiff has any just reason to complain. It is neither inadequate nor misleading. There is nothing in either of these specifications that requires further notice. Neither of them is sustained.

There was no error in permitting the witness to answer the question recited in the sixth and last specification.

Judgment affirmed.